**Makram TADROS, M.D., Appellant,**

v.

**D. Jackson COLEMAN, M.D., and Cornell University Medical College, Appellees.**

No. 596, Docket 89–7731.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1990.

Decided March 9, 1990.

Makram A. Tadros, M.D., pro se.

Thomas Mead Santoro, Ithaca, N.Y. (Walter J. Rellihan, Jr., of counsel), for appellees.

Before OAKES, Chief Judge, KEARSE, Circuit Judge, and FLETCHER, Circuit Judge.*

PER CURIAM:

Makram A. Tadros appeals from two orders of the United States District Court for the Southern District of New York, Robert P. Patterson, Jr., Judge, dated June 22, 1989, and August 15, 1989. On June 22, 1989, the district court denied Tadros's motion to amend his complaint and granted summary judgment dismissing his action against Cornell University Medical College and D. Jackson Coleman, chairman of its ophthalmology department. Tadros alleged that defendants Cornell and Coleman discriminated against him on the basis of his Egyptian nationality in denying him the benefits or "inherent assignments" of a visiting lecturer during his last one-year appointment as a visiting lecturer in ophthalmology and refusing to reappoint him upon expiration of his appointment on June 30, 1986. Tadros's complaint alleged claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), and section 16 of the Civil Rights Act of 1870, 42 U.S.C. § 1981 (1982), as well as pendent state law causes of action for breach of contract and fraud. On August 15, 1989, the district court, affirming its decision of June 22, 1989, denied Tadros's motions for reargument and for a stay of summary judgment so that the parties might reopen discovery. We affirm the orders of the district court.

The district court opinion recites the full background of this case, *see Tadros v. Coleman,* 717 F.Supp. 996, 998–1002 (S.D. N.Y.1989), and there is no need to repeat it here. The district court dismissed Tadros's Title VII claim, because he did not show that he was an "employee" entitled to the protections of Title VII, *see id.* at 1002–06, and, in the alternative, because he failed to file in timely fashion both his charge with

the Equal Employment Opportunity Commission and his complaint with the district court. *See id.* at 1006–09. The district court then dismissed Tadros's section 1981 claim on the basis that "section 1981 provides '[n]o greater or lesser protection against discriminatory practices' than does Title VII." *Id.* at 1009 (citations omitted). Finally, the district court dismissed the pendent state law causes of action for lack of sufficient independent jurisdictional basis. *See id.* at 1010.

We agree with the district court's thoroughly reasoned conclusion that Tadros was not an employee entitled to the protection of Title VII and that neither his EEOC charge nor his complaint were timely filed.

■ We depart, however, from the district court in its analysis supporting dismissal of Tadros's section 1981 claim. Section 1981, of course, protects the right of all persons to "make and enforce contracts" without regard to race. Although the Supreme Court has recently seen fit to read the phrase "make and enforce" so as to "confine § 1981 within the narrowest possible scope," *see Patterson v. McLean Credit Union,* — U.S. ——, ——, 109 S.Ct. 2363, 2379, 105 L.Ed.2d 132, (1989) (Brennan, J., dissenting), it has yet to reinterpret the term "contracts." Section 1981 applies to racial discrimination in the making and enforcement of all contracts, not just employment contracts. *See, e.g., Runyon v. McCrary,* 427 U.S. 160, 179, 96 S.Ct. 2586, 2598, 49 L.Ed.2d 415 (1976) ("The prohibition of racial discrimination that interferes with the making and enforcement of contracts for private educational services furthers goals closely analogous to those served by § 1981's elimination of racial discrimination in the making of private employment contracts...." (footnote omitted)).[1] Therefore, the district court's find-

---

* Of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

1. Our decision in *Carrion v. Yeshiva Univ.,* 535 F.2d 722, 729 (2d Cir.1976), relied upon by the district court, is not to the contrary. There we stated that section 1981 affords "[n]o greater or lesser protection against discriminatory practic-

es" than Title VII. *Id. Carrion* is inapposite, because it dealt with claims "specifically" within Title VII, e.g., claims arising from employment contracts. *Id.* Here, as the district court found, Tadros's claims do not come within Title VII, because he was not an employee. Moreover, last year's Supreme Court opinion in *Patterson*

**12**

ing that Tadros was not an employee does not resolve his section 1981 claim, because it does not preclude the possibility that Tadros sought to make another type of contract with Cornell. The record indicates that the relationship Tadros sought to continue with Cornell might well be described as contractual, even if not rising to the level of an employment contract. In return for granting him library privileges, Cornell might have been able to list his name as a visiting lecturer, as it had done in the past.

 We need not decide, however, whether a contract was at issue, because Tadros's section 1981 claim is barred in any event by the statute of limitations. A section 1981 action is not subject to the Title VII statute of limitations, but rather is subject to the state statute applicable to personal injury claims. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62, 107 S.Ct. 2617, 2622–23, 96 L.Ed.2d 572 (1987). In this case, therefore, New York's three-year limitations period for personal injury actions applies. *See* N.Y.Civ.Prac.L. & R. § 214(5) (McKinney Supp.1990).[2] The statute began running on June 19, 1985, the day that Tadros had notice that he would not be reappointed when he signed a release form agreeing to withdraw a previous civil rights charge in return for a one year *terminal* appointment to expire on June 30, 1986. *See Cervantes v. IMCO, Halliburton Servs.*, 724 F.2d 511, 513–14 (5th Cir.1984) (section 1981 employment discrimination claim accrues when employee notified that he would not be rehired); *cf. O'Malley v. GTE Serv. Corp.*, 758 F.2d 818, 820 (2d Cir.1985) ("[T]imeliness of a discrimination claim [under Title VII or 42 U.S.C. § 1983] is measured from the date

the claimant receives notice of the allegedly discriminatory decision, not from the date the decision takes effect."). Tadros did not file his complaint in federal district court until June 24, 1988, several days after the limitations period had run. The record provides no evidence of bad faith or deliberate misconduct by defendants in delaying Tadros's filing of a complaint to suggest that they should be equitably estopped from raising the statute-of-limitations defense. *See id.* at 822. Tadros does not advance any other reasons that would justify overlooking his failure to file suit in a timely manner.

Because Tadros's federal claims must be dismissed, the district court properly dismissed his pendent state law claims. Likewise, because Tadros's section 1981 claim is barred by the statute of limitations, the district court did not err in denying his request to amend his complaint as well as his motions for reargument and for a stay of judgment to permit further discovery.

We deny the request made at oral argument by appellees' counsel for sanctions against Tadros for filing this appeal.

The orders of the district court are affirmed.

*v. McLean Credit Union*, — U.S. —, —– —, 109 S.Ct. 2363, 2372–77, 105 L.Ed.2d 132 (1989), establishes that section 1981 provides less protection after the formation of an employment contract against employment discrimination than does Title VII. *See also Johnson v. Railway Express Agency*, 421 U.S. 454, 461, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975) ("We generally conclude, therefore, that the remedies available under Title VII and under § 1981,

although related, and although directed to most of the same ends, are separate, distinct, and independent.").

**2.** *Lukens* implicitly modified the rule we previously followed, which applied New York's three-year limitations period for liabilities created by statutes. *See, e.g., Keyse v. California Tex. Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978) (per curiam).